(No. 20765.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error *vs.* OTTO LAWSON *et al.* Plaintiffs in Error.

*Opinion filed October 23, 1931.*

L. N. LEGRIS, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, T. R. JOHN-STON, State's Attorney, and JOHN P. MADDEN, for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Otto Lawson and Ralph Lawson were indicted in the circuit court of Kankakee county for the burglary of a chicken house and the larceny of fifteen chickens belonging to Edgar Bonvallet. A jury returned a verdict of guilty and found their ages to be twenty-four and twenty-six years respectively. Judgment was rendered on the verdict, Otto Lawson was sentenced to the State Reformatory and Ralph Lawson was admitted to probation. They prosecute this writ of error for a review of the record.

The prosecution's case practically rests upon the testimony of Frederick Bressner, an accomplice. He testified that, one night between the first and tenth days of April, 1930, accompanied by Otto Lawson and Ralph Lawson, the plaintiffs in error, he drove in an automobile from the city of Kankakee to the home of Edgar Bonvallet, near the village of Wichert, in the same county, and there stole fifteen chickens; that they also stole twelve chickens from one Fisher in the same neighborhood; that they put all the stolen chickens in two sacks, hid them behind a high board fence at the rear of a race-track a few miles from Kankakee and returned to their respective homes at two o'clock in the morning; that about four hours later they met, drove to the place where the chickens were hidden, took them to Dwight, about thirty miles distant, where the witness sold them for $26 or $27, and that they divided the proceeds on their return to Kankakee. Bressner and Otto Lawson, the former testified, thereafter visited Indiana, Ohio, Kentucky and Missouri and returned to Kankakee on June 15, 1930,

when they were arrested. Ralph Lawson, who had remained at home in Kankakee, was arrested the following day. After his arrest, Bressner and two young men who confessed they had stolen chickens with him, accompanied two police officers and the State's attorney to the vicinity of Wichert and pointed out Bonvallet's and Fisher's homes, among others, as the places at which they had committed such thefts.

Both plaintiffs in error denied the charges made against them and asserted that they were at home at the time the offenses were alleged to have been committed. The plaintiffs in error, as well as a sister and her husband, lived with their mother in Kankakee. The mother, sister and brother in-law testified that during the first ten days of April, 1930, the plaintiffs in error were not absent from home between nine o'clock in the evening and seven o'clock on the following morning. Otto Lawson testified that he was absent from Kankakee county for a short period prior to June 15, 1930, during which he visited uncles in Cincinnati and St. Louis.

The errors assigned and argued by the plaintiffs in error concern, first, the admission and exclusion of evidence; second, the giving and refusing to give certain instructions, and third, the sufficiency of the evidence to sustain a conviction. In our view only the second contention needs to be considered.

The sixth instruction given at the request of the prosecution reads as follows: "The court instructs the jury that the testimony of an accomplice is competent evidence, and the credibility of such accomplice is for the jury to pass upon as in the case of any other witness; and while the testimony of an accomplice will sustain a verdict when uncorroborated, yet such testimony must be received with great caution; but if the testimony carries conviction and the jury are convinced of its truth, they should give to it the same effect as would be allowed a witness who is in no

respect implicated in the offense." This instruction is not a correct statement of the law and, for that reason, was held erroneous in *People* v. *Rongetti,* 338 Ill. 56. The jury, in determining the credibility of an accomplice, are governed by the rule that his testimony is subject to grave suspicion and should be acted upon with great caution. The jury should carefully consider such testimony in the light of all the other evidence in the case and the influence under which the testimony was given in order to determine whether the purpose of the witness was to shield himself from punishment, to obtain some personal benefit or advantage or to gratify his malice. If, after all the facts and circumstances in evidence are considered, the uncorroborated testimony of an accomplice is of such a character as to prove guilt beyond a reasonable doubt, it will authorize a verdict of guilty. (*People* v. *Rongetti, supra; People* v. *Elmore,* 318 Ill. 276; *People* v. *McKinney,* 267 id. 454; *People* v. *Rosenberg,* 267 id. 202). The sixth instruction asked by the People omitted essential qualifications and should not have been given.

The plaintiffs in error, by their twenty-eighth instruction, sought to have the court inform the jury that while a person accused of crime might be convicted upon the uncorroborated testimony of an accomplice, still the jury should always act upon such testimony with great caution and subject it to careful examination in the light of all the other evidence in the case, and that the jury ought not to convict solely upon such testimony unless, after a careful consideration of it, they were satisfied beyond a reasonable doubt of its truth and that reliance might safely be placed upon it. The instruction was refused. It set forth a rule governing the jury in the consideration of an accomplice's testimony and was applicable to the case. No equivalent instruction was given; the plaintiffs in error were entitled to an instruction embodying a statement of the rule, and the court erred in refusing the requested instruction.

A conviction on the uncorroborated testimony of an accomplice will not be sustained unless the record is substantially free from prejudicial error. (*People* v. *Gordon,* 344 Ill. 422; *People* v. *McGeoghegan,* 325 id. 337; *People* v. *Johnson,* 314 id. 486; *People* v. *Crane,* 302 id. 217). Bressner, a self-confessed accomplice, was the only witness who implicated the plaintiffs in error in the theft of Bonvallet's chickens. He had been admitted to bail and was at liberty at the time of their trial. His testimony, in important respects, was uncertain and inconsistent. He was unable definitely to fix the date of the theft, asserting that it was committed between the first and tenth days of April, 1930, and both before and after Easter. He affirmed and denied that he had an automobile during that period. He testified that he drove to Dwight, thirty miles distant, at a speed of thirty-five miles an hour, and, with interruptions occupying less than thirty minutes, required three hours to reach his destination; that he sold the chickens there for $26 or $27, divided the proceeds between the two plaintiffs in error and himself and received $6 or $7 as his equal share. The plaintiffs in error denied participation in the crime charged and their alibi was supported by their mother, sister and brother-in-law. In this conflict of the evidence, it was the jury's province to determine the credibility of the witnesses, the weight to be accorded to their testimony, and ultimately, the guilt or innocence of the plaintiffs in error. These decisions, however, should have been made under instructions by the court correctly setting forth applicable rules of law.

For the errors in giving the People's sixth instruction, and in refusing the defendants' twenty-eighth instruction, the judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*