(No. 37021▮

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOBE LEE, Plaintiff in Error.

*Opinion filed Nov. 30, 1962.—Rehearing denied Jan. 28, 1963.*

HOWARD T. SAVAGE, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and RUDOLPH L. JANEGA, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Following a bench trial in the criminal court of Cook County, defendant was found guilty of larceny of a motor vehicle and was sentenced to the penitentiary for a term of not less than five years nor more than seven years. His sole contention on this writ of error is that he was not proved guilty beyond a reasonable doubt.

It is undisputed that, on the night of September 9, 1959, a black 1956 Ford automobile was stolen from the street in front of a house at 7922 South Greenwood Avenue in Chicago and was never seen by its owner again. There was, however, a conflict in the evidence as to the defendant's participation in the crime.

The principal witnesses on the People's case in chief were Vernice Milligan and Clayborne Rast. Each had pleaded guilty to the theft of the same automobile and each was serving a penitentiary sentence at the time of the defendant's trial. Their testimony was to the effect that the defendant, who operated a garage and automobile repair shop, offered to pay Milligan $25 if he got a 1956 Ford, that Milligan and Rast stole the car in question and delivered it to the defendant at his garage, and that the defendant paid Milligan $25, which he split with Rast.

Defendant denied having had a conversation with Milligan on the afternoon of September 9, 1959, as Milligan had testified, and denied that Milligan brought any car to his garage. He testified that his hours at the garage were usually from 8 o'clock A.M., until 8:30 or 9 o'clock P.M. and that in September, 1959, he never had occasion to be there as late as 11 o'clock P.M., which was the time Milligan and Rast testified they brought the car to the garage. He denied giving either Milligan or Rast $25 on September 9, 1959. Arthur Ingram, night man at the garage, whose hours were from 8 o'clock P.M. to eight o'clock A.M., testified that he never saw Milligan or Rast in the garage at any time in

1959, and that defendant, during September, 1959, never stayed later than 9 o'clock P.M. Walter Morgan, a mechanic at the garage, who worked from 10 o'clock or 11 o'clock A.M. until 11 o'clock P.M. or midnight, testified that he had never seen Milligan or Rast in the garage, and that the defendant never stayed later than 10 o'clock P.M.

As a rebuttal witness, the People produced one David Varon, who testified that he had known the defendant for about three years and was familiar with the garage. He had, apparently, not talked to anyone about the case until the day of the trial. By coincidence, he had appeared in the courtroom that day to ask for a change in the terms of the probation he had been granted after pleading guilty to three automobile thefts. He testified that he had seen a black 1956 Ford at the garage in September, 1959, between dark and midnight. He further testified that he had a key to the garage, and that he returned at 4 o'clock A.M. and saw the same Ford all cut up except for certain parts. He recalled that the defendant had, in the presence of Walter Morgan, told him he needed a front end and that he picked this car up from the street. Varon also testified that he saw Milligan and Rast in the garage early in December, 1959.

Another rebuttal witness for the People, police officer Corless, testified that he saw Milligan and Rast enter defendant's garage early in December, 1959. Milligan testified in rebuttal that Ingram had opened the door for him when he brought the Ford to the garage in September, 1959, and both Milligan and Rast corroborated the testimony of Varon and officer Corless with respect to their visit to the garage in December, 1959.

The People's evidence, if believed by the trial judge, is clearly sufficient to establish the guilt of the defendant. Thus, the real issue is not the sufficiency of the evidence, but the credibility of the witnesses. We have repeatedly held that, when a case is tried without a jury, it is for the trial judge, who saw and heard the witnesses, to determine their credi-

bility and the weight to be accorded their testimony, and that this court will not set aside a conviction that depends upon such matters unless it is necessary to prevent apparent injustice. (*People* v. *Carr*, 22 Ill.2d 619; *People* v. *Lucky*, 21 Ill.2d 501.) Defendant does not dispute these principles, but contends that the caliber of the People's witnesses and the circumstances under which they testified were such as to make their testimony completely unworthy of belief and to raise a reasonable doubt as to the defendant's guilt. He points out that the case against him rests upon the testimony of three convicted thieves, two of whom, Milligan and Rast, were alleged accomplices. He further contends that the testimony of the two accomplices is uncorroborated except by Varon, whose testimony is suspect by reason of his criminal record and the somewhat unusual circumstances of his appearance in court. Defendant also argues that Varon was obviously antagonistic to him, as indicated by evidence of some sort of a previous altercation between the two, and also by the fact that the trial judge had to sustain objections to Varon's testimony because of his propensity to volunteer information going beyond the scope of the questions. He contends that, by reason of these factors, Varon's testimony is entitled to even less weight than that of Milligan and Rast and is, therefore, worthless as corroboration.

While we have frequently stated that the uncorroborated testimony of an accomplice is attended by infirmities which require the utmost caution, we have also held that such testimony is sufficient to convict if it satisfies a court or jury, as the case may be, beyond a reasonable doubt. (*People* v. *Wysocki*, 20 Ill.2d 62; *People* v. *Baker*, 16 Ill.2d 364; *People* v. *Nitti*, 8 Ill.2d 136.) Here the two accomplice witnesses had already been sentenced before the trial of the defendant. Thus, some of the dangers usually attendant upon accomplice testimony were minimized, though not eliminated. All the circumstances relied upon to discredit the testimony of the People's witnesses were before the trial

judge, and we presume that he gave due consideration to these factors before arriving at his judgment. It should be noted that two of the three witnesses for the defense, including the defendant himself, had also been previously convicted of either theft or forgery and, therefore, their credibility, like that of the three principal witnesses for the People, had been impeached. A review of the record compels the conclusion that the caliber of some of the witnesses on both sides left something to be desired. To adopt a rule requiring that a conviction be set aside unless supported by the testimony of witnesses of unimpeachable respectability would impose an unwarranted and unrealistic burden upon law enforcement officers and would require closing the books on many crimes. The trial judge was not obligated to reject the testimony of the People's witnesses, and we cannot say, as a matter of law, that he was unwarranted in finding the defendant guilty beyond a reasonable doubt.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*