(No. 37333.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Er-. ror, *vs.* JOHN LANE, Plaintiff in Error.

*Opinion filed November 26, 1963.*

CALISTE J. ALSTER, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and WILLIAM J. MARTIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

. The defendant, John Lane, was indicted along with Tom Blevins, Otis D. Woods and Ollie Vinson for the crime of armed robbery. The defendant was tried separately in a bench trial in the criminal court of Cook County. He was found guilty and sentenced to the penitentiary for a term of not less than two, nor more than six years. His contentions on this writ of error are (1) that the finding of guilt is against the weight of the evidence, (2) that the conviction is based primarily upon testimony of an alleged accomplice which is contradicted and impeached and insufficient on which to base a conviction, and (3) that the testimony of the alleged accomplice is uncorroborated.

It is undisputed that a robbery took place at the apartment of Jasper Hall on Gladys Street in Chicago about 12:45 A.M. on September 22, 1961. The robbery was committed by Otis Woods and Tom Blevins who entered the apartment, lined up the persons present against the wall and took their wallets and money. Blevins had a shotgun in his hand and Woods had a revolver. The defendant, who was a friend of Hall, was among the 10 or 12 victims in the apartment at the time of the robbery. His wallet and money were taken along with those of the other victims. The defendant had arrived at the Hall apartment shortly before the robbery and he and the others present were playing cards or shooting dice when the robbery took place. He denies participation in the crime.

The case for the People rests largely on the testimony of Otis Woods. He testified that Lane planned the robbery, provided Woods and Blevins with the robbery weapons and acted as the "inside man" by joining the card game to become a victim of the hold-up. Woods had known defendant when he went to Ohio and helped Woods make bond to get out of jail on a forgery trial. Woods gave a convincing and detailed account of the planning and execution of the robbery. He testified that on the date in question he went to the Playtime Tavern where defendant was an owner

or part-time bartender. He arrived there at 4:00 P.M. with O. D. Vinson. At about 7:30 P.M. Woods had a conversation with the defendant on the street near the tavern where the defendant showed Woods and Vinson a car he had purchased. Woods says that the defendant told him that he was going to play poker later that night and asked him if he and someone else, maybe Vinson, would want to hold up the game. After they went back in the tavern they decided that Vinson was drinking too heavily to participate. The defendant then introduced Tom Blevins to Woods and suggested he would accompany Woods. Woods had not known Blevins prior to that time. Woods and the defendant drove in the latter's car to a building where the defendant obtained a sawed-off shotgun, which he put in the trunk. Woods left the Playtime Tavern for a time and returned about 10:00 P.M. when he met Blevins and the defendant. After drinking for awhile, Woods, Blevins and Lane drove in the latter's car to 3921 Gladys Avenue where the poker game was being held. Lane double-parked his car and said he would go in and look things over and return to tell them what the situation was. Five minutes later he returned and said there were 10 to 12 people inside and everything was "okay." He then pulled his car into the alley and opened the trunk for Blevins to get the shotgun. Blevins and Woods waited in the car a few minutes and then went into the building. Blevins was armed with the sawed-off shotgun and Woods carried one pistol and kept a small revolver that Lane had given him in his pocket. After gaining admittance to Jasper Hall's apartment where the game was being held, Blevins herded the card players at gun point and Woods took each man's billfold, including the defendant's. Blevins told the victims to stay on the floor at least ten minutes after they left. Woods and Blevins returned to defendant's car. Blevins put the shotgun on the floorboard and Woods kept the pistols. Woods and Blevins walked back to the Playtime Tavern and in a few minutes the defendant re-

turned. Woods, Blevins, Vinson and the defendant then drove around and Woods divided the proceeds of the robbery among the three participants. The stolen billfolds were put in a mailbox except that Lane's was returned to him, as was the approximately $40 taken from him in the robbery. The defendant put the shotgun in the trunk of his car and the pistol used in the robbery in his pocket.

The State showed that Woods had pleaded guilty to armed robbery and that previously he had been convicted of forgery in Ohio.

Woods made a statement to the police the morning of his arrest which was substantially the same as what he testified to at the trial. He told the defendant that he had made no statement. Thereafter in the afternoon of the same day, after talking with the defendant, he made a second statement which absolved defendant from knowing participation in the crime.

The defendant contends that the testimony of an alleged accomplice is viewed with suspicion and acted on only after careful consideration and that where an alleged accomplice is a witness who is impeached or discredited, his testimony is insufficient to sustain a conviction.

We have frequently stated that the uncorroborated testimony of an accomplice is attended by infirmities which require the utmost caution, yet we have also held that such testimony is sufficient to convict if it satisfies a court or jury, as the case may be, beyond a reasonable doubt. (*People* v. *Lee,* 26 Ill.2d 477; *People* v. *Wysocki,* 20 Ill.2d 62; *People* v. *Baker,* 16 Ill.2d 364; *People* v. *Nitti,* 8 Ill.2d 136.) The trial judge considered the testimony of Woods with proper caution and there appears to be no reason for this court to say as a matter of law that he should have rejected this testimony.

Furthermore, the accomplice testimony of Woods was substantially corroborated by the defendant's own testimony as to his acts on the night of the crime, by defendant's con-

duct as observed by the victims of the robbery and the police, and by the defendant's unexplained possession of the robbery weapons. Except for his denial of participation in the robbery, the defendant's testimony as to his actions on the night of the crime is almost identical with the description of his conduct by Woods. He admitted driving Woods and Blevins to the scene of the robbery and driving with them shortly thereafter when the money taken from him was admittedly returned. After Woods had taken the victims'. money, Blevins told them to lie face forward on the floor and not to get up for at least ten minutes. Hall, the owner of the premises, testified that Lane said, "No one should get up within ten minutes like they said or someone will get hurt." Samuel Russell, another victim of the robbery, testified that when someone started to get up, the defendant said, "No, man, let's not get up now; let's wait a while. Somebody might get hurt. They may not be gone." After the robbery, the defendant seemed frightened and was shaking and sweating. Hall asked the defendant to drive them. to the police station but he refused, stating, "I don't want to go to the police station. I have enough troubles. They always hang around my tavern." The defendant's reluctance to report the crime to the police is a factor that could properly be considered in determining whether or not he was involved.

The night after the robbery, when Blevins was identified in the defendant's tavern, the defendant, who was 12 to 16 feet away when the arrest took place, said nothing. He was asked by the police if he ever saw Blevins before and he answered that he had previously seen him in the tavern. His silence and failure to accuse Blevins was a further indication of defendant's attempt to elude detection.

The defendant denied to the police that he owned the 1961 Cadillac parked in the alley, but the police took his keys, opened the trunk of the 1961 Cadillac and there found the sawed-off shotgun used in the robbery.

Officer Dineen testified that at a line-up, Blevins, in the presence of the defendant, made a verbal statement implicating him in the robbery. The defendant remained silent and did not deny the accusation. No objection was made to the testimony at the trial, so the objection to it as hearsay cannot be raised for the first time on review. (*People* v. *Sinclair,* 27 Ill.2d 505; *People* v. *Frenchwood,* 28 Ill.2d 139.) Defendant contends there was no showing that defendant heard the accusation. Defense counsel admitted that officer Dineen established that defendant was present when the accusation was made. Whether it was heard and whether the circumstances were such that a response normally would be made were questions for the determination of the trial judge.

The defendant contends that his silence did not constitute an admission because he denied the crime when he was arrested and was not required to deny at every stage. This situation is similar to that present in *People* v. *Bennett,* 3 Ill.2d 357, where the defendant, when arrested, denied participation but was silent when later confronted with the information that the receiver of stolen property had implicated him. The court stated that ordinarily an accused is not bound to continue to deny the crime every time he is accused while in police custody, but that there the circumstances involved more than naked repetitions of a charge of guilt because the accused was confronted for the first time with the fact that the receiver had implicated him. Here, the defendant denied the robbery when questioned by the police but said nothing when confronted for the first time by his co-defendant's accusation. Under these circumstances it was proper for the court to consider the defendant's silence as evidence of an admission of guilt.

The defendant's own testimony was implausible and contradictory. We have held that when a defendant elects to justify or explain his presence at or near the scene of a crime, while denying participation, he must tell a reasonable

story or be judged by its improbabilities. *People* v. *Hansen*, 28 Ill.2d 322.

In view of the testimony of the accomplice, Woods, the corroboration of this testimony by the defendant's own testimony and conduct, and the improbability of certain of the defendant's testimony, we cannot say that the trial judge was unwarranted in finding him guilty. No reversible error was committed.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*