(No. 43576.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. JOHN EDWIN GEORGE, Appellant.

*Opinion filed September 30, 1971.*

JAMES McCLURE, of Elmhurst, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and WILLIAM V. HOPF, State's Attorney, of Wheaton, (JAMES B. ZAGEL, Assistant Attorney General, and RALPH J. GUST, Assistant State's Attorney, of counsel,) for the People.

MR. JUSTICE WARD delivered the opinion of the court:

A jury found John Edwin George guilty of arson, burglary and theft in the circuit court of Du Page County and he was sentenced to terms of from five to fifteen years.

On July 20, 1968, the David Pipkins family of Downers Grove left for a vacation in Florida. Early on July 23, 1968, the Downers Grove Fire Department responded to a report of a fire at the Pipkins's residence, and found a rear door of the house had been forced open. Book matches were found in the recreation room, and it was observed that there had been several fires in various parts of the building, including a closet in the dining room, the family room and a bedroom closet. On July 24, Pipkins, who had been called home, reported that property had been taken from his home, including some coins, tools and a tool chest.

On August 1, 1968, the defendant phoned Sergeant Walthers of the Oak Brook Police Department and informed him that he was concerned that he might be suspected of burglaries which had taken place in the area. He asked Sgt. Walthers what he should do. He told Walthers in a later conversation that he believed three youths, Terry Kovarik, Michael Munjak and Michael Agriesti had committed the burglaries and he turned over a coffee can filled with miscellaneous jewelry. The can, he explained, had been left in his auto. He also told Walthers

he had been informed by the youths where they had hidden a tool box. Pipkins subsequently identified the jewelry and the tool box as his property, which had been taken in the burglary.

The three youths when questioned by police admitted their participation in the Pipkins burglary but said that the defendant had been the leader in the crime.

On August 8, 1968, Sgt. Louis Fulgaro of the Downers Grove Police Department, who had obtained a search warrant for the defendant's home in connection with the investigation of another crime, searched the defendant's residence pursuant to the warrant. He observed in his search a pink pillowcase in the defendant's bedroom closet and two gold religious medals. Terry Kovarik later advised him that a pink pillowcase had been used to carry the stolen jewelry from the Pipkins house. On August 10, Sgt. Fulgaro and another officer drove Terry Kovarik to the defendant's residence. As they were approaching the house, Kovarik pointed to a pipe wrench on the front lawn and identified it as the wrench used to break into the Pipkins's residence. On learning this Sgt. Fulgaro obtained a search warrant for the purpose of seizing the wrench and the pink pillowcase. Later that day he procured another search warrant to seize the two religious medals, which apparently Kovarik told him had been taken from the Pipkins's house. The wrench and pillowcase were seized by Sgt. Fulgaro under the former warrant and the medals were later taken under the latter warrant.

The defendant was indicted and at his trial Kovarik testified that he and the defendant, together with Munjak and Agriesti, had committed the burglary. Kovarik was sixteen years old at the time of the burglary and had been a runaway for four months. During this period he lived at times in the home where the defendant lived with his parents and his younger brother Dennis, and at times he stayed at an apartment the defendant shared with Jim

Bernicky. Kovarik said that on the night of July 22 the defendant, Munjak, Agriesti and he had walked four blocks from the defendant's home to the Pipkins's residence. He did not wish to take part in the burglary the defendant proposed, he said, but the defendant threatened to return him to his parents or take him to the police if he did not participate. The defendant physically threatened Munjak and Agriesti if they would not participate, he testified.

A pipe wrench was used by defendant and Agriesti to open the rear door of the Pipkins's house and throughout the burglary Kovarik stood at the front door as a lookout. A pink pillowcase filled with coins was brought downstairs. After Kovarik, Munjak and Agriesti had left the residence the defendant remained upstairs for about four or five minutes, Kovarik testified. He did not see any fires started but he said he did hear the defendant say earlier during the burglary that since it was a poor haul he would "take the house with me."

Munjak, who was fifteen years old at the time of the burglary, testified that the defendant, Kovarik, Agriesti and he had committed the crime. He, too, was a runaway, having run away a couple of weeks before the crime and he, too, had lived with the defendant. On the night of August 22, the four, he said, had been riding in the defendant's car and had parked it about a block and a half from the Pipkins's residence. His testimony was that after the four entered the house, Kovarik had stood at the door but that later Kovarik came upstairs. He testified that after the defendant, Agriesti, and he left the house Kovarik remained inside for a half minute or so. He said that after the crime he told the defendant that he was going to return to his home. At that the defendant said he would first have to sign a paper admitting several burglaries. The defendant "pushed him around" and, as he remembered, struck him once before he signed the paper.

Munjak pleaded guilty to the Pipkins's burglary in a juvenile proceeding and was placed on probation. No

charges were brought against Kovarik. Agriesti was in the Marine Corps and did not testify at the trial.

Michael Kreiser, a technician in the crime laboratory of the State of Illinois, testified he was of the opinion that striations found on a door knob of the Pipkins's residence had been made by the wrench seized under the search warrant. The defendant then stipulated the wrench was the wrench used in the burglary.

The defendant testified that on July 22 when he returned home from work Agriesti borrowed his car. While he was walking to a restaurant later that night he saw Kovarik sitting in the automobile. Kovarik told him that Agriesti and Munjak were then "robbing" a house. Five or ten minutes later Agriesti and Munjak came to the car carrying a bag and a toolbox. When the defendant told them to get rid of the bag and toolbox they said they could not return it. The defendant said he refused to get in the car and told Kovarik, Munjak and Agriesti that he wanted his auto when he returned from the restaurant. When they returned about an hour later to his house he testified he struck Kovarik and refused to let them take the stolen items into the house or leave them in the car. Agriesti and Munjak then left in the auto to dispose of the stolen items. When they returned he permitted them to sleep that night in his car. He denied that he had ever previously seen the wrench, which had been seized, but in rebuttal one Daniel Palenske testified that he had been previously the defendant's employer and that he had loaned the defendant a wrench similar to the one which was introduced in evidence. The witness said the wrench had never been returned. A motion by the defendant to suppress evidence was denied.

The defendant's first contention is that there was error committed in admitting the wrench into evidence and error in admitting the testimony concerning the pillowcase and religious medals. His argument is that the

two search warrants of August 10 were fatally defective, and therefore, the items were illegally seized.

The complaint for the first search warrant of August 10 only stated with respect to probable cause: "Complainant says that he has probable cause to believe, based on the following facts, that the above listed things to be seized are now located upon the person and/or premises set forth above: Based on evidence and information supplied to complainant by Terry Kovarik and based on personal observation of complainant." It was under this warrant that the wrench and pillowcase were taken.

The complaint was obviously insufficient to permit the judicial officer to find probable cause for the issuance of a search warrant. In *People v. Francisco, 44 Ill.2d 373, 376,* in considering probable cause to authorize the issuance of a search warrant we said: "Probable cause means simply that the facts and circumstances within the knowledge of the affiant, and of which he had reasonably trustworthy information, were sufficient in themselves to warrant a man of reasonable caution to believe that the law was being violated and that evidence of it was in the premises or vehicle or on the person to be searched." Thus, to support the issuance of a search warrant, the probable cause which is required has two dimensions. First, facts must be related which would cause a reasonable man to believe a crime had been committed. Secondly, facts must be set forth which would cause a reasonable man to believe the evidence was in the place to be searched.

We need not consider whether the statement in the complaint that the affiant had observed the described evidence satisfies this second requirement, for there are no facts set forth in the complaint from which it could be concluded that a crime had been committed. Thus, the first requirement was not satisfied. Probable cause for the issuance of the search warrant must be found in the complaint for the warrant. (Ill.Rev.Stat. 1967, ch. 38, par.

108—3. This court described this requirement in *People v. Savanna Lodge No. 1095, L.O.O.M., 407 Ill. 227, 230-231;* saying: "It is not a debatable question in this State that the complaint upon which a search warrant is issued must state the facts on which the complainant bases his belief with sufficient definiteness that if the complaint is false perjury may be assigned thereon."

The warrant here was obviously invalid, but as defects in a search warrant are immaterial if the search can be otherwise justified *(People v. Wright, 41 Ill.2d 170, cert. denied 395 U.S. 933),* it is necessary to consider whether the search was defensible without a warrant.

The wrench, which, as well as the pillowcase, was taken under the first warrant, was seized as it lay in open view on the defendant's front yard. The Supreme Court observed in *Harris v. United States, 390 U.S. 234, 236, 19 L.Ed.2d 1067, 88 S.Ct. 992:* "It has long been settled that objects falling in the plain view of an officer who has a right to be in a position to have that view are subject to seizure and may be introduced in evidence." This court has expressed the same view. In *City of Decatur v. Kushmer, 43 Ill.2d 334, 338-339,* we said: "A search implies a prying into hidden places for that which is concealed, and it is not a search to observe that which is open to view. A search implies an invasion and quest with some sort of force either actual or constructive. [Citations.] The condition of the area was exposed to public view and plainly visible from beyond the premises. The officials in entering upon the land merely viewed and photographed a condition already observed by them from public areas. There was no probing into private places and no violation of the appellant's privacy or his home. [Citations.] Further, the fact that the officials may have trespassed by entering the land would not, of itself, transform their viewing into an unreasonable search."

Officer Fulgaro testified that when he first observed the wrench in plain view he was not on the defendant's

premises. It is clear from the above authority that the wrench was properly admitted into evidence. The invalidity of the search warrant did not under these circumstances affect the admissibility of the evidence. We do not consider that *Coolidge v. New Hampshire, 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022,* affects this holding.

We do not judge there was error through the references at trial to the pillowcase and religious medals taken from the defendant's bedroom. The pillowcase was obtained under the same invalid warrant as the wrench. The medals were seized pursuant to the second warrant of August 10, which the defendant claims was improperly issued because it was obtained on the basis of information secured in the execution of the first invalid warrant of August 10. It will not be necessary to consider whether the medals were improperly seized. Neither they nor the pillowcase were introduced in evidence. The testimony concerning them was first brought out by the defendant through his cross-examination of the prosecution's witnesses. We consider the defendant cannot now complain of the testimony and this is so despite the acknowledged illegality of the seizure of the pillowcase and our assuming that the obtaining of the medals was under an invalid warrant.

It is reasonable to say that a defendant may not interject an issue into his case and then contend that the bringing of it to the attention of the jury was erroneous. This court in a situation resembling the one here said in *People v. Halteman, 10 Ill.2d 74, 83:* "Obviously the defendant cannot now be heard to complain of evidence of other offenses committed by the defendant with children other than complaining witness, when such testimony was brought out by defendant upon cross-examination in the first instance."

The prosecutor here had made no reference to the pillowcase or medals when the defendant broached the subject of them on his cross-examination of the State's

witnesses. By doing so he waived his right to protest the concerned searches and seizures. We are unpersuaded by the defendant's contention that because his motion to suppress had been denied he had to assume the items of evidence would be introduced, and for that reason he asked the questions concerning them. The prosecutor did not move to have the items introduced into evidence. He did not have the witnesses identify them or otherwise prepare for their introduction in evidence. There was no reference to them until the defendant on his cross-examination of the prosecutor's witnesses opened the subject.

Another claim of error is that the trial court did not allow the defendant to cross-examine the State's rebuttal witness Palenske as to whether he had ever been investigated concerning burglaries which had occurred in the area and did not allow him to recall a policeman, who was a witness for the prosecution, to establish that there had been such an investigation. Upon the court's refusal to recall the witness the defendant made an offer of proof of a police report in which Palenske's name appeared with 11 others under the heading: "Subjects investigated, Reference burglaries."

There seems no doubt that whether a witness has been charged with an offense is a subject for cross-examination, so that a possibly influencing interest of the witness may be bared. We observed in *People v. Mason, 28 Ill.2d. 396, 400-401:*"However, showing interest or bias on the part of a witness is also an accepted method of impeachment, and even in jurisdictions where evidence of arrest or indictment is not ordinarily admissible to impeach credibility generally, the fact that a witness has been arrested or charged with a crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely."

The defendant has not presented any case authority

which has extended the right to cross-examine to show that a witness simply had been under investigation. We consider that the question is one resting within the sound discretion of the trial court. It was said in *People v. Halteman, 10 Ill.2d 74, 86:* "As a general rule the latitude to be allowed in cross-examination of witnesses rests largely in the discretion of the trial· court. Such cross-examination should be kept within fair and reasonable limits, and it is only in a case of clear abuse of such discretion, resulting in manifest prejudice to the defendant, that a reviewing court will interfere. [Citations.]" Considering the circumstances here, including the character of the testimony and the overly broad language of the objected to questions ("To your knowledge were you under investigation for any burglaries?" and "Were you ever under any investigation by the Downers Grove Police?") we cannot say that a clear abuse of discretion, under the norm described in *Halteman,* has been shown.

It is argued, too, by the defendant that there was error when the People in closing argument commented that the defendant did not call his brother Dennis or Jim Bernicky to corroborate his testimony. The prosecutor said: "Well, the defendant has no obligation or responsibility to put anybody on, yet again I can think of a couple of witnesses that could have corroborated him." The prosecutor then referred to the. fact that the defendant's brother Dennis could have testified that Kovarik and Munjak were his friends and didn't go out with the defendant socially, and that Bernicky could have supported the defendant's testimony that he didn't threaten Munjak.

The defendant presented no objection to the argument in the trial court. While complaints of seriously prejudicial argument will be considered on review though no objection to it was made at trial, we do not consider, from a review of the entire record, that the argument here was of that character. Accordingly, we judge the defendant waived his right to review of this question by his failure to

object. See *People v. Donald, 29 Ill.2d 283; and People v. Moore, 9 Ill.2d 224.*

The defendant's final contention is that the testimony of Kovarik and Munjak was undeserving of credibility. He points out that Kovarik was never prosecuted and that Munjak received probation and says that they were given favored treatment in exchange for their testimony. He argues that there are conflicts in their versions of the crimes, *viz.,* whether Kovarik ever went upstairs, whether the defendant threatened Munjak, and who was the last to leave the building, and, finally, he points to the possibility of a motive of revenge since the defendant was the one who implicated the others in the crimes. All of these were matters which were presented to the jury. Presented, too, was the testimony of Munjak and Kovarik that they had received no promises for their testimony and that there was no design wrongfully to implicate the defendant. There were some discrepancies in the testimony given but there was substantial agreement on the major circumstances of the commission of the crimes.

While an accomplice's testimony is subject to careful scrutiny *(People v. Lawson, 345 Ill. 428),* it is sufficient to convict if it satisfies the trier of fact beyond a reasonable doubt. *(People v. Lee, 26 Ill.2d 477.)* The jury here was fully instructed concerning the attention accomplice testimony must be given. One instruction was: "The testimony of an accomplice witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

We observed in *People v. Wollenberg, 37 Ill.2d 480, 484, 485:* "the testimony of an accomplice, even though it is attended with infirmities (such as malice toward the accused, promises of leniency, *etc.*) and uncorroborated, is sufficient to sustain a guilty finding if it satisfies the jury beyond a reasonable doubt [citations], and *** we will not disturb a conviction based thereon unless it is plainly apparent that such degree of proof is lacking. [Citations.] "

Considering the record we must say there was sufficient evidence to satisfy the jury as to the defendant's guilt beyond a reasonable doubt.

For the reasons given, the judgment of the circuit court of Du Page County is affirmed.

*Judgment affirmed.*