THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS TRAUSCHT, Defendant-Appellant.

(No. 74-276;

Second District (1st Division)—May 9, 1975.

Ralph Ruebner and Ira A. Moltz, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Clarence Wittenstrom, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

The defendant was convicted of rape in a jury trial and was sentenced to a term of 4-10 years. On appeal, defendant contends: (1) that he was not proven guilty beyond a reasonable doubt; (2) that the pretrial identification of the defendant by the victim was the result of an unnecessarily suggestive showup which also tainted the victim's in court identification; and (3) that defendant was denied a fair and impartial trial due to improper closing remarks of the prosecutor.

The facts are as follows. The victim testified that she trains and schools horses, and between 9 and 9:15 P.M., on March 14, 1973, she was driving home from this activity. As she was pulling her car into her driveway, she noticed that the time was about 9:30 P.M. since the news was then on her car radio. She backed her car into her lighted garage, made sure that the car door was locked and, as she went to close the garage door, she saw that someone was present with a windbreaker over the top of his head. This individual then pushed the victim back into the garage, grabbed her around the neck and told her to be quiet. At this time, the artificial lighting in the garage was right beside them to their right. She noticed that he had on dark levis, a light shirt and jacket and his windbreaker over his head in such a manner that she could also see that he had curly hair and dark eyes. When the victim attempted to scream the assailant pushed her in the face, and after this the windbreaker was no longer over his head. He was standing beside her and had his elbow around her throat and while he was holding her she tried to turn around and she got a glimpse of him. He then closed the door, which was badly warped, and then turned off the light. He also tried to close a smaller door which does not stay shut unless it is locked, and this door would not close completely. Then, while he was dragging the victim by the neck, she turned around and saw his head and face. While the garage had no windows, there was a residential street light about 50-75′ from the garage and the victim testified that there was some moonlight that night. According to the victim, the rape occurred right next to the door, and when the door blew open she could see the assailant "very clearly."

After the rape, the assailant took the victim's purse and ran out of the garage. The victim immediately reported the rape to her husband who immediately reported the rape to the Aurora Police Department and gave them a description of the rapist. Within minutes two officers arrived at the victim's home and tried to calm her down; shortly thereafter another officer arrived and informed the victim that a suspect had been caught matching the description given and that they wished her to identify him. The defendant, who had been picked up by the police

within one block of the scene of the rape, was taken to the victim's house and stood 15 to 20 steps below the victim on a staircase. The officer who had arrested the defendant and who stood with him when he was viewed by the victim testified that he could see the victim upstairs and that the staircase was "lit up pretty good." The victim testified that she recognized the defendant as the person who had raped her. The victim then made a positive identification of the defendant, Thomas Trauscht, in the courtroom as the man who had raped her.

A supervising criminalist for the Bureau of Identification testified that she found seminal stains on the lower front portion of the defendant's jacket, on the inside front of the defendant's undershorts, on the victim's panties and on the victim's slacks. This witness further testified that it is not possible to identify the source of semen. While the defendant later testified in detail as to his activities during the day in question, defendant did not testify that he had had sexual relations with anyone else or had masturbated on the day in question.

A police officer testified that he found the victim's purse in a place which, according to subsequent testimony, placed it between the scene of the rape and the place where defendant had been picked up by the police.

The defendant testified that he was stopped by the police while walking on the sidewalk to his house, which was about three houses away. Defendant testified that he was at the home of a friend, Pete Jungles, from about 5:30 P.M. on the day in question until after 10 P.M. Defendant further testified that one Terry Boulding, Jungles' roommate, was also present during the evening, that one Debbie Trimarco arrived at the apartment sometime after 9 P.M. and that the three individuals were present in the apartment when defendant left after 10 P.M. to walk home. Defendant testified that it took 15 to 20 minutes to walk home from the Jungles' apartment, that another 10 to 15 minutes was spent from the time he was stopped by the police to the time he was taken to the victim's home and that he arrived at the police station at 10:25 P.M. Defendant also testified that the lighting on the staircase in the victim's house was poor and that he could not see the victim up the stairs.

Debbie Trimarco testified for the defendant and stated that she saw the defendant in Jungles' kitchen at 9:25 P.M. and did not see the defendant again that evening. Terry Boulding and Pete Jungles also testified for the defendant. They variously set the time of defendant's departure from the Jungles' apartment as between 9 and 10:30 P.M. Both testified that defendant was in the apartment when the television was switched to a program aired between 10 and 10:30 P.M. After the jury had begun its deliberations, the trial judge called the defendant's three

alibi witnesses before him and read the perjury statute (Ill. Rev. Stat. 1973, ch. 38, par. 32—2) to them.

Upon the jury's verdict of guilty, the trial court sentenced the defendant to a term of from 4-10 years. This appeal followed.

■■ The applicable standard of review to be employed in a rape case was stated by the supreme court in *People v. Reese* (1973), 54 Ill.2d 51, 57—58, 294 N.E.2d 288, 291, as follows:

> "Courts of review have a special duty of carefully examining the evidence in rape cases. (*People v. Qualls,* 21 Ill.2d 252.) But in doing so the court may not encroach upon the function of the trier of fact to weigh credibility and otherwise assess the evidence which was presented. (*People v. Springs,* 51 Ill.2d 418.) That evidence has been conflicting will not justify a reversal of a finding by the trier of fact. (*People v. Springs,* 51 Ill.2d 418; *People v. Hiller,* 7 Ill.2d 465.) A court of review will not set aside a finding of guilty unless the evidence is so palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused. *People v. Sumner,* 43 Ill.2d 228."

The defendant does not dispute the fact that the victim was raped, but only contends that the evidence failed to establish that he was the rapist. We disagree.

■■ The victim testified that during the attack she saw her assailant very well. Defendant was picked up by the police shortly after the rape, within one block of the scene, wearing clothes matching the description of the rapist given. The victim identified the defendant at her home shortly after reporting the rape and positively identified the defendant as the rapist in court. The defendant had unexplained seminal residue on his jacket and clothes and the testimony of his three alibi witnesses was so inconsistent and unworthy of belief that the trial judge was led to read the perjury statute to them. Upon a review of the record as a whole we cannot say, applying the standard of review stated in *Reese*, that the evidence is so palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused. Defendant was proven guilty of rape beyond a reasonable doubt.

■■ We find that the defendant's second contention, regarding the victim's pretrial and in-court identification of the defendant, was waived by the defendant by his failure to either move to suppress the pretrial identification or to object to the identification testimony at trial. (*People v. Fox* (1971), 48 Ill.2d 239, 269 N.E.2d 720; *People v. Thomas* (1971), 132 Ill.App.2d 198, 267 N.E.2d 703.) While conceding his failure to

object to either of the complainant's identifications of the defendant at trial, defendant urges that we consider the issue as plain error. Supreme Court Rule 615(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(a)) provides:

> "Insubstantial and Substantial Errors on Appeal. Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."

The plain error rule is permissive. It allows a court of review discretion to consider an alleged error which affects a defendant's substantial rights despite defendant's failure to object. (*People v. McAdrian* (1972), 52 Ill.2d 250, 255, 287 N.E.2d 688, 690—91.) We find that the admission of the pretrial and in-court identification testimony of the defendant does not constitute plain error. The complainant's in-court identification testimony was positive and, in light of her clear opportunity to view the defendant in the garage, credible. Thus, even if we assume (without so deciding) that the admission of the victim's pretrial identification testimony was error, such error was not of sufficient magnitude to be considered plain error in light of the court identification testimony.

■■ Defendant's final argument is that he was denied a fair and impartial trial due to the improper closing remarks of the prosecutor which constituted plain error. It is to be noted that the defendant failed to object to the allegedly improper remarks at trial. While it is true, as defendant contends, that complaints of serious prejudicial argument will be considered on review although no objection thereto was made at trial (*People v. George* (1971), 49 Ill.2d 372, 274 N.E.2d 26), we do not find that the allegedly improper remarks were of such character. Rather, we find from a review of the entire record, that the prosecutor's comments were either fair comments on evidence in the record or were not of such magnitude to constitute reversible error. We therefore find that defendant has waived his right to review of this issue by his failure to object. *People v. Dailey* (1972), 51 Ill.2d 239, 282 N.E.2d 129.

Judgment of the trial court affirmed.

Affirmed.

SEIDENFELD, P. J., and HALLETT, J., concur.