(No. 37185.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EARL CARPENTER, Plaintiff in Error.

*Opinion filed May 27, 1963.*

James B. Moran, of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Edward J. Hladis and William J. Martin, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Underwood delivered the opinion of the court:

Earl Carpenter contends his bench trial in the criminal court of Cook County upon a charge of unlawful sale of narcotic drugs to William R. Jackson resulted in his conviction and subsequent sentence to a term of 20 to 25 years

imprisonment, because of the erroneous admission of evidence, and that reversible error was committed by the State in failing to call an informer who participated in the transaction. Defendant was jointly indicted with Prince Parson, but the latter is not included in this writ of error.

At the trial Federal Bureau of Narcotics agents Jackson, Dayle and Connolly testified. Jackson stated that on the evening of March 4, 1960, he and a special employee left Dayle and Connolly in a government car near 43rd Street and St. Lawrence Avenue in Chicago and entered Joe's 600 Bar located at the intersection. He testified he had seen the special employee about once a week between March 4, 1960, and the following October, but knew him only as "Sam". Prince Parson appeared at the bar about 6:00 P.M., and Sam, Jackson and Parson met in the men's room where Sam introduced Jackson as a friend named "Benny". Parson told Jackson he had heroin for sale at $120 a spoon, and Jackson paid him $120 for one spoon. Jackson had received this money from Dayle. Parson then told Jackson and Sam to wait in the tavern and that someone would get in touch with them in about an hour. Parson left the tavern shortly after 6:00 o'clock that evening and after driving a short distance parked, left his automobile on Champlain Avenue and disappeared from view in the 4200 block. Agents Dayle and Connolly, who had followed Parson in their unmarked car, returned to the 43rd Street— St. Lawrence area and parked in the alley south of 43rd Street. They testified they saw Carpenter, Jackson and the special employee (Sam) leave the tavern, that Sam returned to the tavern and then Carpenter and Jackson walked south across 43rd Street and into the alley. Jackson's testimony was that defendant, Carpenter, entered the tavern about 7:00 o'clock the same evening and nodded; then he and Sam followed Carpenter out to the sidewalk and Sam reentered the tavern; that he and Carpenter walked into the alley where defendant recovered a package from on top of

the snow, gave it to Jackson and told him to be careful and to "see Prince" if he wanted "more stuff". Carpenter then continued down the alley. Jackson stated that he had never seen Carpenter before and did not see him again until January 18, 1961, shortly before the trial.

Dayle testified he observed Carpenter from across the intersection and from the car at the end of the alley, but had not previously known him, nor did he see him again until after his arrest on November 18, 1960. Carpenter stated he knew none of the Federal agents. Dayle also said the informer's name was Sam Neal, but that he was sometimes known as Howard Hughes; that he (Dayle) had caused him to be hired as a special employee; that Neal worked only with Dayle and that Neal had testified in another case in the latter part of 1960. He did not see Parson until his arrest on August 2, 1960.

The defendant points out that his arrest occurred more than 8 months after the incident; that only William R. Jackson was named as a witness on the indictment and that neither Sam Neal nor Howard Hughes was named in the list of witnesses. Defendant claims he first learned at the trial of the informer's alleged participation in the transaction, and that his name was either Sam Neal or Howard Hughes. Sam Neal was then being held in the witness quarters of the State's Attorney, and defendant contends he was not given an opportunity to interview this alleged eyewitness before a finding of guilty was entered, thereby depriving him of a fair trial.

Allegations that reversible error existed as a result of the People's failure to call an informer as a witness have been frequently considered by this court, and we have there held the People are not so obligated. (*People* v. *Green,* 27 Ill.2d 39; *People* v. *Aldridge,* 19 Ill.2d 176.) Here the defendant was informed of the identity and readily accessible location of the witness in the early stages of the trial. In addition, the trial judge offered to call the informer as a

court's witness, an offer not accepted by defense counsel. Following the finding of guilty, the judge directed the State to produce the informer in court so that defense counsel might interview him in order to present any material matters in a motion for a new trial. Defendant's attorney did so interview the witness, thereafter stating he had nothing new to present. In the light of this concern for defendant's protection manifested by a conscientious trial judge, it is difficult to perceive how the defendant could have been prejudiced. While defendant complains that the interview with the informer was conducted in the presence of a Federal attorney, the court had been told that the informer was being held for another matter not involving the case at issue. Under these circumstances we are of the opinion that the court did not abuse its discretion. In *People v. Touhy*, 361 Ill. 332, we declared that we knew of no rule which would authorize the court to compel a witness to submit to examination in private by counsel for either side, especially in the absence of the consent of the witness.

Defendant contends the receipt by the court of testimony concerning a conversation between the agent Jackson and Parson outside the defendant's presence was error. Jackson related that in this conversation the co-defendant, Parson, told him he had pure heroin for sale at a certain price, that Jackson paid him the required amount of money and was told by Parson to wait in the tavern and someone would get in touch with him in about an hour. The only basis assigned by counsel in his objection to this testimony on the trial was that the conversation occurred "outside the presence of defendant". Seemingly, this type of objection, frequently appearing in the trial records before this court, arises from a misconception of the rules of evidence, and a belief that any statement or conversation occurring in the absence of defendant is inadmissible. Such is not the law.

While we are not clear as to the origin of this notion, it apparently is connected in some way with the hearsay

rule. An examination of the basis for this rule will clarify the situation. "Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." (McCormick, Law of Evidence, sec. 225; see also, Cleary, Handbook of Illinois Evidence, sec. 31.1 *et seq.*) The fundamental purpose of the hearsay rule was and is to test the real value of testimony by exposing the source of the assertion to cross-examination by the party against whom it is offered. While the administration of an oath and the right of confrontation are also spoken of as necessary elements, the essential feature, without which testimonial offerings must be rejected, is the opportunity for cross-examination of the party whose assertions are offered to prove the truth of the act asserted. (Wigmore on Evidence, 3rd ed. sec. 1361, *et seq.*; *People* v. *Smuk,* 12 Ill.2d 356.) If this requirement is met, with the exception of instances such as those where the silence of the defendant is claimed to constitute an implied admission, the presence or absence of the defendant is immaterial.

The distinction between admissible testimony and that which is barred by the hearsay rule is well illustrated by Wigmore's example of the witness A testifying that "B told me that event X occurred". If A's testimony is offered for the purpose of establishing that B said this, it is clearly admissible—if offered to prove that event X occurred, it is clearly inadmissible, for the only probative value rests in B's knowledge—and B is not present to be cross-examined.

Here the witness Jackson was present in court. He testified under oath as to only what he saw and heard, and was cross-examined with reference thereto. His testimony was relevant to the issue of defendant's guilt, and was clearly connected to the subsequent delivery of narcotics

to the witness by the defendant. The objection to this testimony was properly overruled.

Finally, the defendant attacks the credibility of the State's witnesses. This court has repeatedly declared a conviction will not be disturbed unless it clearly appears that there is not sufficient credible evidence to establish the guilt of the accused beyond a reasonable doubt. Where the evidence on an issue is conflicting but legally sufficient if the prosecution's witnesses are believed, the question is for the trier of fact. (*People* v. *Guido,* 25 Ill.2d 204; *People* v. *Glass,* 16 Ill.2d 595; *People* v. *Sain,* 384 Ill. 394.) The record here sustains the trial court's conclusion that defendant's guilt was established beyond a reasonable doubt.

No error appearing, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*