THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT L. SIMMONS, Defendant-Appellant.

(No. 74-186; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Second District (2nd Division)—December 23, 1975.

Ralph Ruebner and Adam Lutynski, both of State Appellate Defender's Office, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz and Edward N. Morris, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

After a jury trial in which the defendant was convicted of armed robbery, robbery, aggravated battery, and unlawful use of weapons, the trial court entered judgment on all four counts, and imposed but a single sentence of from 4 to 12 years in the penitentiary.

The defendant appeals, claiming that his convictions for robbery,

aggravated battery, and unlawful use of weapons should be reversed because the acts leading to those convictions were not independently motivated or separable from the conduct upon which his conviction for armed robbery was based.

The State agrees that the convictions for robbery and unlawful use of weapons should be vacated because these two crimes were not independently motivated, but claims that the conduct which constituted the aggravated battery was independent of the armed robbery. The State therefore contends that defendant's convictions for armed robbery and aggravated battery should be affirmed.

The evidence against the defendant indicated that on the night of the incident he attended a dance at the St. Elizabeth recreation center in Rockford, Illinois. Shortly after defendant arrived, an announcement was made that the dance was being closed early. Following the announcement, the complaining witness, Wash, was in the hallway holding records which he had brought to be played at the dance. Defendant and two of his friends walked by Wash; one of defendant's friends asked to see the records, and Wash consented. The requester looked through the records, handed some of them back to Wash, kept the rest and started toward the door. Wash pursued him, grabbed his records, and continued toward the exit door. Before he reached the exit, the defendant approached Wash and snatched the records from him saying he was going to take the records to another dance. Wash asked for his records but defendant refused. Wash grabbed them from defendant; defendant again took them from Wash and handed them to his companion who had first taken the records. Wash testified that defendant told him if he wanted his records he would have to come across the street; that defendant pulled Wash down the steps of the recreation center and a short way into the street. He there, for the first time, confronted Wash with a gun and told him that if he ran he would shoot him. Once across the street, defendant told Wash that no one who snatched things away from Pete Simmons "gets away with it." Wash testified that defendant then hit him over the head with the gun.

Under the State's theory of the case, the series of acts (beginning with the taking of the records and ending with Wash being walked across the street at gunpoint) constitute one continuous act of armed robbery which was completed when Simmons drew the gun thereby securing possession of the records. To support this theory at trial, the State pointed to Simmons' instruction to Wash—to come across the street if he wanted his records—as indicating that the robbery was not complete prior to the production of the gun.

■■ We cannot accept this rationale. The acts which constituted the

robbery (the forcible taking of the records from Wash) were completed before any deadly weapon was used. Defendant neither used nor threatened the use of a deadly weapon until after he had possession of the records and their retention. The gun was not used to obtain the records or to secure their retention; it came into use solely in connection with the subsequent aggravated battery upon Wash. (See *People v. Whitley*, 18 Ill.App.3d 995, 1000 (1974).) We conclude from our review of the evidence that the defendant was correctly convicted of robbery but improperly convicted of armed robbery under the circumstances presented.

Defendant next contends that his conviction for aggravated battery cannot stand because it arose from the same transaction—the closely related events which constituted robbery. Having reached the above conclusion, we discuss defendant's argument within the altered circumstance.

■■ It is clear that the law in Illinois prohibits the conviction and the sentencing of a defendant for the lesser or included offenses where multiple offenses arise out of the same conduct. (*People v. Williams*, 60 Ill.2d 1, 13 (1975); *People v. Lilly*, 56 Ill.2d 493, 495-96 (1974); *People v. Perkins*, 22 Ill.App.3d 88 (1974).) Separate convictions and sentences are proper, however, when the activities which constitute the multiple offenses are separately motivated, although occurring in a series of very closely related acts. (*People v. Williams*, at 14; *People v. Burks*, 29 Ill. App.3d 74, 82 (1975).) From the facts already related, it is apparent that defendant struck Wash not in connection with the robbery but from a separate motive or desire to "get even." This case is thus distinguishable from *People v. Perkins*, 22 Ill.App.3d 88, (1974), and *People v. Brown*, 18 Ill.App.3d 857 (1974), and is more akin to the cases of *People v. Harris*, 20 Ill.App.3d 79 (1974) and *People v. Whitley*, 18 Ill.App.3d 995 (1974). (See also *People v. Green* (Gen. No. 47447, filed 11/17/75), 62 Ill.2d 146 (1975); *People v. Kneller*, 25 Ill.App.3d 935 (1975); *People v. Simmons*, 29 Ill.App.3d 911 (1975).) We therefore affirm the conviction for aggravated battery.

■■ Defendant was charged under section 24—1(a)(2) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, § 24—1(a)(2)), (which makes it an unlawful use of a weapon for a person to knowingly carry or possess the weapon with intent to use it against another) and under section 12—4(b)(1) of the Code (Ill. Rev. Stat. 1973, ch. 38, § 12—4(b)(1)) (which provides that a person commits an aggravated battery who in committing a battery uses a deadly weapon). In *People v. Williams*, 60 Ill.2d 1, 14 (1975); a case in which the defendants had been convicted of both burglary and armed robbery, it was stated:

"[A]lthough burglary and armed robbery involve different elements of proof and the men committed a series of acts, their unauthorized entry with the intent to commit theft and the actual theft by means of armed robbery constitute two offenses arising from the same conduct involved in robbing the * * * [victims]. Only the conviction of the most serious of the two offenses, armed robbery, can stand, and the judgment and sentence on the burglary conviction must be reversed."

The case at hand is comparable. Although the charges of unlawful use of weapons and aggravated battery require different elements of proof, and the defendant committed a series of acts (by walking the complainant across the street at gunpoint and striking him on the head with the gun) the two offenses arose from the same conduct—the aggravated battery of Wash. Thus, under *Williams*, and *Perkins*, the conviction for the unlawful use of a weapon must be vacated.

We, therefore, reverse the conviction for armed robbery, and vacate the conviction for unlawful use of a weapon, but affirm the convictions of robbery and aggravated battery, and remand the matter to the trial court for resentencing.

Reversed in part, affirmed in part, and remanded for resentencing.

RECHENMACHER, P. J., and DIXON, J., concur.