THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ISAAC DOUGLAS, Defendant-Appellant.

Fifth District    No. 80-279

Opinion filed January 12, 1982.

John H. Reid and John W. McGuire, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Donald W. Weber, State's Attorney, of Edwardsville (Martin N. Ashley and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:
The issue in this appeal is whether the circuit court of Madison

County abused its discretion in denying defendant's motion to withdraw his guilty plea. We find no reversible error in those proceedings and therefore affirm.

Defendant was charged with an armed robbery which occurred on Christmas Day of 1979. He entered a negotiated plea of guilty to that charge during his jury trial after the State and defense had closed their respective cases in chief and prior to the State's anticipated rebuttal. Eight days later, defendant's motion to withdraw his guilty plea was filed. Subsequently, defendant was sentenced to eight years' imprisonment. Then, after an evidentiary hearing, defendant's motion to withdraw his guilty plea was denied.

The record indicates that defendant's trial counsel, Michael Glenn, moved for and was granted leave to withdraw prior to sentencing and prior to the hearing on defendant's motion to withdraw his guilty plea. Private counsel then was appointed in Mr. Glenn's stead. The main thrust of defendant's arguments at the hearing to withdraw the guilty plea was that Mr. Glenn had overborne the 18-year-old defendant's will and coerced defendant into pleading guilty. The witnesses at this hearing, all appearing on defendant's behalf, were Mr. Glenn, defendant, and defendant's mother, Clara Douglas.

Mr. Glenn testified that he urged defendant to plead guilty for two reasons: (1) he did not expect to prevail if the case went to the jury and (2) he was of the opinion that defendant might well receive a sentence longer than eight years if he persisted in his plea of not guilty in view of defendant's juvenile record. Mr. Glenn further testified that he expected the testimony of Arthur Price for the State on rebuttal to be particularly damaging. In that regard, in reciting the factual basis for defendant's plea, the prosecution summarized Mr. Price's expected testimony as indicating that defendant gave Mr. Price a check stolen from the robbery victim and went with Mr. Price to cash it and, also, that defendant had written letters to Mr. Price asking him to change his testimony regarding those events. Mr. Glenn stated that he was of the opinion that defendant would not have pleaded guilty except for his urging. Mr. Glenn recalled that he and defendant had spoken about changing the plea several times. At first defendant refused, and then Mr. Glenn asked members of defendant's family to help convince him. According to Mr. Glenn, defendant maintained his innocence "all the way through" and "in no way wanted to stop the trial at that point." Mr. Glenn further testified that he had listened to a tape recording of the guilty plea proceedings and had noted that when the court asked defendant whether he had committed the robbery, defendant had answered "yes" only after a 20-second pause. According to Mr. Glenn, he had taken defendant aside at that time and explained to him that his guilty plea would not be accepted if he did not admit his guilt.

Defendant next testified in his own behalf and stated that he paused before admitting the offense because he did not commit it. He confirmed that Mr. Glenn was the person who first mentioned pleading guilty and stated that at first he had wanted to go through with the trial but that Glenn had predicted a lengthy sentence in that event. Asked whether his change of plea was voluntarily made, defendant replied: "I just thought it was the best way out."

Mrs. Douglas, defendant's mother, then testified that she had spoken with Mr. Glenn concerning the guilty plea about three times at the jail, twice in the company of defendant. Defense counsel questioned her as to (1) whether defendant expressed "an interest or desire to change his plea * * *," and (2) whether defendant ever told her that he was pleading guilty voluntarily. The State's objections to both questions were sustained on the grounds that they sought to elicit hearsay evidence. The last question defense counsel asked her was: "In your opinion did your son plead guilty voluntarily or of his own free will when he pled guilty?" Her reply was: "I couldn't say."

■■ We reject defendant's assertion that those questions directed to Mrs. Douglas to which objections were sustained did not seek to elicit hearsay evidence. We are aware that the declarant, defendant, was present in court and available for cross-examination, as pointed out by the defense. Further, we recognize that the opportunity for cross-examination is the main rationale underlying the hearsay rule, as stated in *People v. Olmos* (1978), 67 Ill. App. 3d 281, 384 N.E.2d 853, *People v. Morris* (1978), 65 Ill. App. 3d 155, 382 N.E.2d 383, *People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738, and McCormick, Evidence §245 (2d ed. 1972). However, we conclude that in order to utilize the opportunity to cross-examine the declarant to prevent the testimony sought to be elicited from being hearsay evidence, the opportunity to cross-examine must, in fact, exist. In the case at bar, the defendant presented the testimony of Mr. Glenn, the defendant, and then defendant's mother, in that order. Thus, Mrs. Douglas could have attributed any statement to defendant; and, since defendant could not be called as a witness by the State after her testimony, there would have been no effective availability of cross-examination. Additionally, if there had been any error in excluding the testimony, it would have been harmless because the questions put to Mrs. Douglas sought to elicit answers which were nothing more than conclusions. Defendant made no attempt to establish by this witness or any other what actually transpired at defendant's plea discussions with his trial counsel.

The record's failure to disclose the content of those discussions requires us to conclude that defendant's assertions of coercion and undue influence were not supported by the evidence. Mr. Glenn's testimony does not establish that he exceeded his proper role as counselor and

advisor to his client. His advice to plead guilty was, by his own account, based on his evaluation of the very difficult situation which faced the defendant. We note that after reflecting on the matter at the later date, Mr. Glenn failed to suggest that he believed that this was not the best advice he could give under the circumstances.

Several factors present here indicate that defendant's decision to plead guilty was voluntary. The admonitions by the trial court to defendant prior to acceptance of the plea were exemplary; defendant does not challenge their sufficiency. During the conference with his attorney in which defendant decided to plead guilty, defendant was accompanied by his mother, who was his alibi witness, and, apparently, at least one other member of the family. Defendant had heard the evidence for the State and in his own defense at the trial and thus had an opportunity to make his own evaluation of his chances for acquittal, an opportunity not normally afforded an accused contemplating the entry of a plea of guilty. Defendant's own statements just prior to acceptance of his guilty plea and at the hearing on the motion to withdraw it indicate that the choice to so plead was ultimately his own. Prior to his change of plea, defendant was asked at least twice whether it was his desire to plead guilty. Moreover, he was twice asked whether he had committed the robbery in question, and he answered "yes" both times. At the hearing on his motion to withdraw his guilty plea, defense counsel asked defendant whether he pleaded guilty voluntarily; defendant answered, "I just thought it was the best way out."

We do not view the 20-second "pauses" by defendant before admitting his guilt in open court as requiring a different result. Faced with the prospect of eight years' imprisonment, his reluctance to abandon even a slim possibility of a verdict of acquittal was understandable. At least those pauses show that defendant carefully considered the questions posed by the court and his answers thereto.

In our view, defendant's decision to plead guilty was not unreasonable. Defendant's sole alibi witness other than himself was his mother. We disagree with defendant's assessment of the robbery victim's identification of defendant at trial as "shaky." Mr. Emery, the victim, described defendant as wearing black pants and a black shirt with gold designs at the time of the robbery. The two robbers were in the victim's presence long enough to take the victim's wallet and coin change, to search through his coat, and to order him to climb into the trunk of his taxi. Although it was night, illumination was provided by a nearby street light and the taxi's headlights and dome light. Further, Mr. Emery replied in the affirmative when asked whether he could see, and certainly he was motivated to remember the robbers' faces. A stipulation read into evidence indicates that the weather at the time of the robbery was not an obscuring factor. There was no indication that the robbers' faces were masked or otherwise

covered. There was testimony that Mr. Emery looked through numerous police photographs on the night of the robbery, that he did not identify any photographs as depicting the robbers, and that defendant's photograph was not among those Mr. Emery then saw. However, on January 14, 1980, Mr. Emery was shown a group of six photographs from which he identified defendant's photograph as depicting one of the robbers. Parenthetically, Mr. Emery testified that he remembered one other person whose photograph was in that group, but not from the robbery. A public defender's investigator testified she was told by Mr. Emery that when he picked the other photograph, an officer told him that that person was "out of the question."

We find the following testimony by Mr. Emery particularly significant with respect to the certainty of his identification of defendant as the gunman:

"Q. How certain are you that this is the man that robbed you?

A. Well, this is—has been about since Christmas since I seen anything about it other than the photos. I'm not very good at remembering names, I wasn't really, at first I wasn't sure that I remembered the face, but I remember the face, sir.

            * * *

Q. Now, did you ever look at their faces when you were looking at the gun?

A. Yes, sir.

            * * *

Q. As you look at that man, is that the same man?

A. It looks like it sir."

We view the above quoted questions and answers as showing that Mr. Emery was quite certain in his identification of defendant. While defendant characterizes the first of these answers as showing a lack of certainty, we agree with the State that this answer was more indicative of the witness' "proclivity to ramble," which the form of the question invited him to do.

It appears that in entering a negotiated plea of guilty, defendant made what he and his attorney considered to be a good bargain under the circumstances. His sentence of eight years was fairly low considering the possible range of six to 30 years. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(3).) Defendant's presentence report reveals juvenile adjudications of guilt of theft and burglary. Accompanying the plea bargain was the dismissal of a pending forgery charge against defendant. These facts indicate to us that defendant was motivated to plead guilty in large part because of these relatively favorable terms.

■■■ The decision whether to allow a defendant to withdraw his guilty

plea, once entered, is within the sound discretion of the trial court. Obviously an abuse of discretion is established where it is shown that the plea was not voluntarily entered. Additionally, an abuse of discretion will be found where it appears the guilty plea was entered on a misapprehension of the facts or law, in consequence of misrepresentations by defense counsel, the prosecutor, or some other person in authority, or where doubt appears as to the guilt of the accused, where the defendant has a defense worthy of consideration, or for any other sound reason. (*People v. Hale* (1979), 77 Ill. App. 3d 721, 396 N.E.2d 317, *reversed* (1980), 82 Ill. 2d 172, 411 N.E.2d 867; *People v. Zuckerman* (1964), 46 Ill. App. 2d 210, 197 N.E.2d 136.) In our view, the record in the case at bar indicates no abuse of discretion by the trial court. The case against defendant at trial was substantial, with highly damaging rebuttal testimony yet expected at the time of the guilty plea. Further, testimony offered by defendant to prove coercion by attorney Glenn amounted to conclusions without factual support. We perceive no error in the trial court regarding defendant's motion to withdraw his guilty plea.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

KARNS, P. J., and JONES, J., concur.